K. M. MAGARIAN (Claimant) v. SOUTHERN FRUIT DIS-
TRIBUTORS (Employer) and NATIONAL CASUALTY INSUR-
ANCE COMPANY (Carrier).

1 So. (2nd) 858
Special Division A
Opinion Filed April 29, 1941

*Tilden, Hays & Walker,* for Appellant;

*E. W. & R. C. Davis,* for Appellees.

BUFORD, J.—On Appeal we review order of the circuit
court made on review of an order of Florida Industrial
Commission denying compensation to claimant under our
Workmen's Compensation Act. The Commission denied
compensation on the finding that claimant was not injured

while in the course of his employment and that he was an independent contractor and not an employee.

The circuit court found contrary to the finding of the Commission as to the injury occurring in the course of the employment and in this finding of the court we concur and, indeed, see no room for question. But the circuit court agreed with the Commission holding claimant to be an independent contractor and, therefore, not entitled to award of compensation, and affirmed the order of the Commission. So the only question we have to determine is whether or not claimant was an employee or an independent contractor.

The employment was seasonal and had continued over the citrus-fruit shipping season for a number of years. Claimant's duties were to locate, inspect and buy citrus fruit for Southern Fruit Distributors throughout the packing and shipping season under the direction and instructions of the managers of Southern Fruit Distributors. He had no authority to use his independent judgment in determining whether or not he would buy any certain fruit, nor as to the time when any certain fruit should be bought and delivered to his principal. These decisions were entirely with the Southern Fruit Distributors. The employment did not require the consumption of his entire or full time during the season but it was his duty to give his time and talent to the performance of his duties in this regard as and when it was required in the employer's behalf and to then go where and do what the employers required in this behalf and to locate purchasable and suitable fruit crops and to advise the employer of the location, ownership and condition of such crops, that the employer might be advised of the availability of fruit if and when it should be desired to purchase the same. The fruit was sold by the producer to and paid for by the employer. The compensation paid

claimant was a sum equal to one cent per field box for all fruit which was bought by and delivered to the employer through the service rendered in this behalf by the employee under the direction of the employer.

The record shows that at the very time claimant was injured he was acting directly under and in accordance with the directions of the employer in the discharge of his duties within the purview of his employment.

We cannot see wherein the method of determining the amount of compensation to be paid the employee has any controlling effect in this case. His authority and duties were not different from what they would have been had he been paid a salary of a stated amount per month or per week to do just what he was required to do under otherwise identical conditions.

The terms of employment were such that either party could have terminated it at any time without cause except the desire to do so and without liability to the other by reason of so doing. The employment was within the course of trade and business of the employer.

Paragraph 2 of Section 2 of Chapter 17481, Acts of 1935, was amended by Chapter 18413, Acts of 1937, to read as follows:

"(2) The term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors whether lawfully or unlawfully employed but excluding independent contractors and excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer."

Thereby the exclusion of "persons who receive for their services a commission or percentage on the business or work done notwithstanding any drawing account or minimum

guarantee that may be agreed upon" was eliminated and the Act thereby became applicable to such employees.

In Restatement of the Law—Agency, Section 220, we find:

"220. Definition. (1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control. (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) The extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) Whether or not the one employed is engaged in a distinct occupation or business;

"(c) The kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) The skill required in the particular occupation;

"(e) Whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work;

"(f) The length of time for which the person is employed;

"(g) The method of payment, whether by the time or by the job;

"(h) Whether or not the work is a part of the regular business of the employer; and

"(i) Whether or not the parties believe they are creating the relationship of master and servant.

"Comment on Subsection (1):

"(a) Servants not performing manual labor. The word 'servant' does not exclusively connote a person rendering

manual labor, but one who performs continuous service for another and who, as to his physical movements, is subject to the control or to the right to control of the other as to the manner of performing the service. The word indicates the closeness of the relationship between the one giving and the one receiving the service rather than the nature of the service or the importance of the one giving it. Thus, ship captains and managers of great corporations are normally superior servants, differing only in the dignity and importance of their positions from those working under them. The rules for determining the liability of the employer for the conduct of both superior servants and the humblest employees are the same; the application differs with the extent and nature of their duties.

"(b) Generality of definition. The relationship of master and servant is one not capable of exact definition. It is an important relationship in that upon it depends the liability of the master to third persons and to his employees under the provisions of various statutes as well as under the common law; the relationship may prevent liability, as in the case of the fellow servant rule. It cannot, however, be defined in general terms with substantial accuracy. The factors stated in Subsection (2) are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relationship. Where the inference is clear that there is, or is not, a master and servant relationship, it is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered."

(A) In this case the employer controlled the determination as to what fruit should be bought, the price to be paid, the time when it should be bought and at which it should

be delivered, and the terms and conditions of the purchase and payment.

(B) The employment was in the trade or business of the employer.

(C) The buying of crops of citrus fruit is usually done by the packer and distributor or under his control and direction.

(D) Some skill and experience is required to make one efficient as a fruit buyer but here the employer did not rely on the judgment of the employee but acted upon its own inspection and judgment.

(E) No instrumentalities or tools were used in the work except an automobile used for transportation.

(F) No time or duration of employment was specified.

(G) The method of payment was based on the number of boxes of fruit which the employer purchased and had delivered.

(H) See (B), *supra.*

(I) The parties evidently thought they did not stand in the relation of master and servant but if, as a matter of law, they did so stand, their mistake in this regard would not change the status.

In 27 American Jurisprudence, page 485, Section 5, we find:

"5. Generally.—Although it is apparent, from an examination of cases involving the independent contractor relationship, that there is no absolute rule for determining whether one is an independent contractor or an employee, and that each case must be determined on its own facts, nevertheless there are many well-recognized and fairly typical indicia of the status of an independent contractor, even though the presence of one or more of such indicia in a case is not necessarily conclusive. It has been held

that the test of what constitutes independent service lies in the control exercised, the decisive question being as to who has the right to direct what shall be done, and when and how it shall be done. It has also been held that commonly recognized tests of the independent contractor relationship, although not necessarily concurrent or each in itself controlling, are the existence of a contract for the performance by a person or a certain piece or kind of work at a fixed price, the independent nature of his business or his distinct calling, his employment of assistants with the right to supervise their activities, his obligation to furnish necessary tools, supplies and materials, his right to control the progress of the work except as to final results, the time for which the workman is employed, the method of payment, whether by time or by job, and whether the work is part of the regular business of the employer."

It appears generally conceded that no hard and fast rule may be stated to control the determination of the question as to whether one occupies the status of an employee or that of an independent contractor and that each case must stand on its own facts and, therefore, no useful purpose may be served by citing particular cases involving different factual conditions.

We have carefully considered the helpful briefs and arguments of counsel in the light of the record and our conclusion is that claimant occupied the status of employee and not that of an independent contractor. The judgment of the circuit court is, therefore, reversed insofar as it holds the claimant to have been an independent contractor and is affirmed insofar as it holds the injury to have occurred in the course of employment of the employee. The cause is remanded for further proceedings not inconsistent with the views herein expressed.

Cost shall be taxed against appellee.

So ordered.

BROWN, C. J., TERRELL and CHAPMAN, J. J., concur.